UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE W. MCLARNEY,
JULIANNE H. MCLARNEY,
THOMAS K. BUSSEY, ANNETTE
BUSSEY, TERRY OWCZARSKI,
JANICE OWCZARSKI, and
SARAH JACKSON,

        Plaintiffs,   No. 04-CV-72656-DT

vs.             Hon. Gerald E. Rosen

BOARD OF COUNTY ROAD
COMMISSIONERS FOR THE COUNTY
OF MACOMB, FRAN GILLETT,
THOMAS L. RAYMUS, and
ROBERT M. SAWICKI,

        Defendants.
_____/

OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on   November 8, 2005  

PRESENT: Honorable Gerald E. Rosen
       United States District Judge

I.  INTRODUCTION

This Section 1983/inverse condemnation action is presently before the Court on

two motions for summary judgment filed by the Defendants: (1) Defendants' "Motion for

Summary Judgment Pursuant to F.R.C.P. 56(c) Based on Statute of Limitations" and (2)

1

Defendants' "Motion for Summary Disposition Based Upon Governmental Immunity."

Plaintiffs have responded to Defendants' Motions.  Having reviewed and considered the

parties' briefs and supporting evidence, the Court has determined that oral argument is

not necessary.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2),

this matter will be decided on the briefs.  This Opinion and Order sets forth the Court's

ruling.

## II. PERTINENT FACTS

## HISTORICAL BACKGROUND

In 1931, the State of Michigan enacted the McNitt-Holbeck-Smith Act, 1931 P.A.

130 (the "McNitt Act").  *See* M.C.L.A. §§ 247.1-247.13, M.S.A. §§ 9.141-9.153,

repealed by Pub. Acts 1951, No. 51; *see also, Petition of Miller*, 18 Mich. App. 480, 171

N.W.2d 473 (1969).  The McNitt Act required each board of county road commissioners

within the State to take over all township highways and incorporate them into one

county-wide highway system and gave the boards six years, i.e., until April 1, 1937, as

the deadline for doing so.  *Id.*

In compliance with the McNitt Act, on March 10, 1936, the County Road

Commissioners for Macomb County, Michigan, asserted jurisdiction and accepted

dedication of several local roads in Macomb Township.  *See* Defendants' Ex. B.  Garfield

Road was one of the township roads dedicated to the county.  *Id.*  The records of the

Macomb County Road Commission confirm that during the 1940's and continuing

thereafter, including through the 1990's, Garfield Road between M-59 and 21 Mile Road was certified as a County Road, within Macomb County's right of way system.  *See* Defendant's Ex. B, D-E, I-J, Q.

THE PLAINTIFF-PROPERTY OWNERS

Plaintiffs George and Julianne McLarney, Thomas and Annette Bussey, Terry and Janice Owczarski, and Sarah Jackson are current landowners whose properties are encumbered by Garfield Road between 21 Mile Road and M-59.  George and Julianne McLarney first rented their home at 46625 Garfield Road in 1961, with an option to buy. [McLarney Dep., Defendants' Ex. F, pp. 17-18.]  The McLarneys exercised that option in 1971 and purchased the property on a land contract.  *Id.*  They paid off the land contract and obtained a warranty deed to the property in 1991.  *Id.* at 18-19.

Plaintiffs Thomas and Annette Bussey purchased the property at 46677 Garfield Road on July 31,1984 but did not build their home on their lot until 1987.  The legal description on their deed expressly notified the Busseys that their property rights were "subject to the rights of the public and of any governmental unit in any part thereof taken, used or deeded for street, road or highway purposes."  *See* Defendants' Ex. K; Plaintiffs' Ex. 60.

Plaintiffs Terry and Janice Owczarski purchased their home at 46565 Garfield Road on March 17, 1988.  The survey obtained for the Owczarskis' mortgage at the time of the purchase of their home shows the easternnmost 33 feet of their property

encumbered by the Garfield Road statutory right-of-way.  *See* Defendant's Ex. N.

Plaintiff Sarah Jackson and her deceased husband, Leonard Jackson, originally signed a five-year land contract to purchase their home at 46535 Garfield in 1983, and outright purchased it by warranty deed on November 14, 1988.  Like the Busseys' deed, the Jacksons' deed stipulates that their property rights are "subject to the rights of the public and of any governmental unit in any part thereof taken, used, or deeded for street, road or highway purposes."  *See* Plaintiffs' Ex. 63.

MAINTENANCE OF GARFIELD ROAD THROUGH THE 1990'S

In 1961 when Plaintiff George McLarney first rented his home on Garfield Road, "Garfield was a dirt road. . . between 21 and M-59."  *See* McLarney Dep. pp. 20, 31.  Notwithstanding that it was a gravel road, there was residential, commercial and other public vehicular traffic on this stretch of Garfield at the time traveling to and from M-59 and 21 Mile Road.  *Id.*

In December 1966, the Michigan Department of Highways inspected the bridge located just north of M-59 on Garfield Road, approximately one-half mile south of Plaintiff McLarney's property, and determined that it was in a very poor and unsafe condition.  *See* Defendant's Ex. H.  In accordance with the State inspector's Inspection Report, the Macomb County Road Commission closed the bridge.  When it did so, the Commission erected signs and barriers to notify vehicular travelers that the bridge was out.  Thereafter, northbound traffic on Garfield could not travel past M-59.  Southbound

4

traffic on Garfield could access from 21 Mile Road, but was limited to local traffic only because vehicles could no longer access M-59. *Id.,* pp. 20-22. Notwithstanding the limited access on this stretch of Garfield Road, the Macomb County Road Commission continued to maintain the road just as it did any other county road.[1]

Commercial traffic also continued on the M-59 to 21 Mile Road stretch of Garfield after the closing of the M-59 bridge. In the 1980's, the "One Stop" Party Store on the southwest corner of 21 Mile and Garfield accessed Garfield south of 21 Mile Road. *See* J. Owczarski Dep., Defendants' Ex. R, pp. 16-20. The public also traveled in vehicles to and from the Camelot Trailer Park via Garfield. T. Owczarski Dep., Defendants' Ex. M, pp. 13-14; A. Bussey Dep., Defendants' Ex. S, p. 20; T. Bussey Dep., Defendants' Ex. U p., 14. Condominium projects were also starting to be built along Garfield during this time and these projects also generated vehicular traffic. *See* J. Owczarski Dep., pp. 16-20.

Despite the fact that Plaintiffs claim that this stretch of Garfield Road was their "private road" before 1995, the general public continued to travel on the road and Plaintiffs never told the public travelers that they were trespassing nor did they tell the public travelers they could not travel on the road. *See* T. Owczarski Dep., Defendants'

---

[1] Mr. McLarney, in fact, acknowledges the Road Commission's continued jurisdiction over the road after the closing of the M-59 bridge as he admitted in his deposition that he contacted the Road Commission requesting snow plow service and requesting that the Commission fix and fill ruts in the road. *See* McLarney Dep. pp. 25-26.

Ex. M, p. 16; A. Bussey Dep., Defendants' Ex. S p. 20.

The Daily Work Reports of the Macomb County Road Commission also establish the Road Commission's continued jurisdiction over the road.  The specific Reports in evidence show the maintenance work completed in the year 1987 in the Garfield right-of-way, which included street sweeping of intersections, approaches and shoulders; grading gravel road and shoulders; surface maintenance and patching; mowing; snow and ice removal; flushing and maintaining culverts and catch-basins; full width litter pick up and hauling; erosion repair; and bush and tree trimming and removal.  *See* Exhibit 1 of Mykytiak Aff., Defendants' Ex. T.  Plaintiffs acknowledge that this record of work done in 1987 was indicative of the type of maintenance work performed by the Road Commission on this stretch of Garfield Road in the 1980's and 1990s.  *See* T. Owczarski Dep., Defendants' Ex. M  p. 16; Jackson Dep., Defendant's Ex. O, pp. 27-29; Mykytiak Affidavit.  Plaintiffs also contacted the Road Commission requesting them to perform grading of the road during this time period.  T. Bussey Dep., Defendants' Ex. U, p. 18; A. Bussey Dep., Defendants' Ex. S, p. 17.

THE 1995 IMPROVEMENTS OF GARFIELD ROAD

In 1995, Macomb Township and the Macomb County Road Commission cooperatively participated in the bituminous paving project of Garfield Road between M-59 and 21 Mile Road.  The County Road Commission paid 60% of all costs of the project and Macomb Township paid 40%.  *See* Defendants' Ex. V.  The project also involved the

construction of a new bridge on Garfield at M-59.  Pursuant to its statutory authority,

Macomb Township created a Special Assessment district to cover the costs for the

Township's share.[2]  Plaintiffs were notified by the Township Supervisor on April 5, 1994

of the following proposed assessments on their properties, which were, ostensibly in

proportion to the benefit to each of their respective parcels of property:

| Property Owners | Benefitted Acreage | Assessment |
|---|---|---|
| George and Julianne McLarney | 0.436 acres | $3,588 |
| Thomas and Annette Bussey | 0.436 acres | $3,588 |
| Terry Owczarski | 0.733 acres | $6,032 |
| Leonard and Sarah Jackson | o.467 acres | $3,843 |

*See* Defendants' Ex. Y, AA-DD.

The property owners were given the option of paying the assessment in full or in

10 annual installments with interest at the rate of 5.915%.  *See* Defendants' Ex. Z.  Sarah

Jackson received her assessment on July 20, 1995 and immediately paid it in full.  The

McLarneys have paid all of their assessments to date.  The Busseys and the Owczarskis

have been paying their assessments through their tax bills.

While Garfield Road was being paved in 1995, Plaintiffs neither objected to the

paving project, nor did they confront any foreman on site about the alleged trespassing of

---

[2]  M.C.L. § 221.20g provides, in pertinent part:

Any road determined to be a public highway in accordance with this
chapter shall be improved by the township pursuant to standards
determined. . . by the board of county road commissioners of that county. . .
. The township may specially assess all or part of the costs of the
improvements against benefitted property owners. . . .

7

Road Commission workers on their property.  *See* McLarney Dep., Defendants' Ex. F, pp. 29-30.

Mr. McLarney, however, now complains that a hickory and an oak tree were removed from his property during the paving project, although he admits that he did not say anything to anyone about the trees at that time.   The Owczarskis also claim to have lost some trees during the paving, but they, too, did not say anything to anyone with the Road Commission about it at the time.  The Busseys did not lose any trees and Sarah Jackson testified that she lost only one non-descript tree.

After the paving of Garfield Road was completed and the bridge structure replaced, the bridge was re-opened to traffic on February 20, 1996.  Since the paving of the Road and the opening of the new bridge, the Macomb County Road Commission has continued to maintain the road, and the public continues to travel on it.

PLAINTIFFS' LAWSUIT

On July 19, 2004, Plaintiffs, acting *pro se*, filed the instant lawsuit.  At the heart of Plaintiffs' Complaint is their allegation that "no portion of Plaintiffs' private property has ever been conveyed in a lawful manner to the Road Commission of Macomb County for a road right of way."  *See* Plaintiffs' Complaint ¶ 13.  Plaintiffs' position is they are they are the sole owners of the property which is currently known as Garfield Road and that they have never been paid any just compensation by the Road Commission for use of the portion of their properties which contains the right-of-way.  *Id.* ¶¶ 13-15.  They, thus,

8

claim that the "taking" of their property is violative of their Constitutional rights (Count I).  They also claim that the "taking" of their trees during the paving project was done without due process (Count II) and that the Defendants are liable to them for "fraud, deceit, and extortion" for having "willfully, knowingly and fraudulently damaged, constructed, trespassed, placed a debt upon, and taken [their] property, and hav[ing] done so under threat of placing liens and encumbrances" upon them personally and upon their property (Count III).

Discovery has now closed and Defendants have moved for summary judgment.  In the first of  two separately filed Motions, Defendants argue that Plaintiffs' action is barred by the statute of limitations and even if it is not time-barred, Plaintiffs cannot make out a legally cognizable claim on the merits.  In their second Motion for Summary Judgment, Defendants' argue that the individual defendants, Fran Gillett, Thomas Raymus and Robert Sawicki, who are all current members of the Macomb County Road Commission, are cloaked with governmental immunity and hence, are absolutely immune from suit in this case.  The individual defendants further argue that they were not members of the Macomb County Road Commission at the time of the dedication of Garfield Road as a county road in 1936 nor were they members of the Commission in 1995 when Garfield Road was paved.  Therefore, having no personal involvement in the actions complained of, they cannot be personally liable on Plaintiffs' constitutional claims.

III.  <u>DISCUSSION</u>

A.  <u>STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT</u>

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[3]  According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as

---

[3]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, <u>Federal Practice & Procedure</u>, § 2727, at 35 (1996 Supp.).

follows:

> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

> \* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> \* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also,*

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will

apply the foregoing standards in deciding Defendants' Motions for Summary Judgment

in this case.

B.    PLAINTIFFS HAVE FAILED TO STATE ANY LEGALLY COGNIZABLE
      CLAIM OF UNCONSTITUTIONAL TAKING

As indicated above, Plaintiffs' position in this lawsuit is that they are the record

title holders of property which is currently known as Garfield Road and that no portion of

their property has ever been lawfully conveyed to the Road Commission of Macomb

11

County for a road right-of-way, nor have they ever been paid any just compensation by the Road Commission for the use of that portion of their property which contains the right-of-way. *See* Complaint, ¶¶ 13-15. In support of their claim, Plaintiffs have submitted copies of the deeds to their respective parcels of property. *See* Plaintiffs' Exhibits 60-63. Presumably Plaintiffs rely upon the property descriptions contained in their deeds to establish that their properties extend to the centerline of Garfield Road. The property descriptions in the deeds do, in fact, bear out this assertion: All of the parcels of property extend to the "East line of Section 31, Town 3 North, Range 13 East", and the center line of Garfield Road is the East line of Sections 30 and 31. *See* Plaintiffs' Ex. 60-63 and Defendants' Ex. B, p. 2.

However, Plaintiffs' deeds also provide that their rights of title are "subject to the rights of the public and of any governmental unit in any part [of the property] taken, used, or deeded for street, road or highway purposes." *See* Bussey and Jackson deeds, Defendants' Ex. 60 and 63. *See also*, Owczarski deed which stipulates that the Owczarskis' title to the described property is "subject to encumbrances and easements of record."[4]

Although Plaintiffs' claim that no portion of their property has ever been

_____

[4] Although the McLarneys' warranty deed does not contain a similar stipulation, the deed was given in fulfillment of their previous land contract pursuant to which they originally purchased the property 20 years earlier and that land contract is referenced in the deed. Plaintiffs, however, have not provided the Court with a copy of that land contract.

12

"conveyed" to the county, Michigan, by statute, deems highways to be dedicated to the public by virtue of their use.

The Michigan highway-by-user statute, M.C.L. § 221.20, provides:

All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act. All highways that are or that may become such by time and use, shall be 4 rods [66 feet] in width, and where they are situated on section or quarter section lines, such lines shall be the center of such roads, and the land belonging to such roads shall be 2 rods [33 feet] in width on each side of such lines.

The first version of the highway-by-user statute was enacted in 1838, the year after Michigan became a state. *See* 1838 RS, tit. 6, chap. 4 § 42; *see also City of Kentwood v. Estate of Sommerdyke*, 458 Mich. 642, 650, 581 N.W.2d 670, 674 (1998). Highways by user are based on an implied dedication by private landowners. *Id.* The Michigan statute creates an implied dedication through a prescribed period of time -- ten years -- as well as a specific width of dedicated right-of-way of four rods, i.e., 66 feet. Under the highway-by-user statute, the presumption of dedication of a road way can be rebutted by evidence showing that the property owner intended to give the public less than the full statutory width of the road. *Id.*, 458 Mich. at 653, 581 N.W.2d at 675. However, as the Michigan Supreme Court held in *City of Kentwood,* pursuant to Michigan's statute, it is only within the first ten years after the creation of the road as a

13

public road that a landowner may assert the right to the property and present evidence that rebuts the existence and the extent of a public highway. *Id.* at 654, 662, 581 N.W.2d at 675, 679. If those first ten years pass without a continuous assertion of right by the property owner, the law presumes that the owner intended to dedicate the entire four-rod width of the road to the public. *Id.* at 662-63, 581 N.W.2d at 679. Thus, it is only the persons who owned the property within the ten years immediately following the creation of the public road that may rebut the presumption of its dedication to the public. *Id.* at 663 n.7, 581 N.W.2d at 679 n.7. Therefore, to succeed in establishing a claim of right to disputed property, current property owners must present evidence that the *original property owners* rebutted the presumption of dedication within the statutory ten-year period. *Id.* at 665, 581 N.W.2d at 680.

In this regard, the *City of Kentwood* case is substantially similar to the instant action. In *City of Kentwood,* the owners of property abutting a public street challenged as an unconstitutional taking, a municipality's widening and improving of the roadway. The property owners did not dispute that the then existing 10-foot wide paved road with an additional six-foot shoulder, i.e., a total road width of 16 feet, was a highway by user but they did dispute whether the additional land extending to 33-feet from the centerline of the road was a part of the dedicated public highway. Although they did not maintain any structure within the disputed area, the property owners mowed the grass and planted trees within the additional 17-foot strip of land.

14

The trial court found the evidence of the property owners' planting of trees and maintenance of the disputed property sufficient to rebut the presumption of dedication to the public use and awarded them $26,210 as just compensation for the land taken. However, on appeal, the Michigan Supreme Court reversed explaining,

> To the extent that the current property owners claim a right to the disputed property, we note that the property in question was never owned by them. They present no evidence that the original property owners rebutted the presumption of dedication within the statutory ten-year period. Their only evidence rebutting the presumption dates from 1955 to the present. However the original farmhouse was built at 3461 52nd Street in 1885 [and 52nd Street has existed ever since that date]. Therefore, the property became property of the state when the road was created by use, and it was deemed dedicated to the state to the full extent of the four-rod [66-foot] width because there was no contrary action taken [by the original property owners] within the statutory period.

*Id.* at 665, 581 N.W.2d at 680.

The same can be said of the Plaintiffs in this case. Although they may have planted trees and otherwise maintained the land which abutted the Garfield Road since they acquired their property in the 1970s and 1980s, they presented no evidence that the original property owners ever rebutted the presumption of the road's dedication by user within the 10-year statutory period. Therefore, the property extending 33-feet from the center of the Garfield Road became the property of the township when the road was created by use. As such, Plaintiffs never owned the property and there was never any unconstitutional taking entitling them to compensation.

Plaintiffs appear to argue, however, that when the County closed the M-59 bridge

15

and closed Garfield Road to all but local traffic, it abandoned any right the public might

have had to the portion of Garfield Road which abuts their property.  The issue of

abandonment was also addressed and rejected in *City of Kentwood*.  Although the dissent

in *City of Kentwood* determined that the municipality had abandoned its right to claim

entitlement to that portion of the statutory 66-foot road-width not actually used as a road,

the majority found no merit in that argument:

> The dissent also claims that we "render[] meaningless" M.C.L. §
> 221.22, M.S.A. § 9.23 (establishing that public highways may be
> discontinued). . . .  However, the dissent is incorrect.  It claims that "a
> portion" of the highway dedicated to the public should be deemed
> discontinued under M.C.L. § 221.22; M.S.A. § 9.23, which reads in full:
>
>> Every public highway already laid out, or hereafter to be laid
>> out, *no part* of which shall have been opened and worked
>> within 4 years after the time of its being so laid out, shall
>> cease to be a road for any purpose whatever. [Emphasis
>> added.]
>
> Therefore, the statute expressly negates the dissent's proposition that
> nonuse of a portion of the dedicated land means that the unused portion is
> "discontinued" and somehow escheats back to the original owner.  In fact,
> by implication, it supports the conclusion that unless the highway is
> abandoned in its entirety, the dedicated land remains owned by the public
> to the full extent of the four-rod width.

458 Mich. at 660-61, 581 N.W.2d at 678.

The foregoing makes clear that Plaintiffs have no claim of unconstitutional taking

of property in this case.  Therefore, the Court will grant Defendants' Motion for

16

Summary Judgment on Counts I and II of Plaintiffs' Complaint.[5]

## C.   MICHIGAN DOES NOT RECOGNIZE A CIVIL ACTION FOR EXTORTION

In Count III of their Complaint, Plaintiffs allege claims of "fraud, deceit and

extortion."  Extortion constitutes a crime in Michigan.[6]   However, Michigan has not

recognized a *civil* cause of action for extortion.  *See Kaul v. Raina*, 2004 WL 405920 at *

---

[5]   Although Defendants also argued in their Motion for Summary Judgment that Plaintiffs' Complaint is time-barred because it was not filed within the six-year period of limitations provided in 28 U.S.C. § 2501, that statute is applicable only with respect to claims against the *United States* government, and **not** to claims against a State or local government entity.  28 U.S.C. § 2501 provides:

Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

As indicated in the statute, Section 2501 is only applicable to "claim[s] of which the United States Court of Federal Claims has jurisdiction."  The jurisdiction of the United States Court of Federal Claims is extremely limited.  As set forth in 28 U.S.C. § 1491,

The United States Court of Federal Claims shall have jurisdiction to render judgment upon *any claim against the United States* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

28 U.S.C. § 1491(a)(1) (emphasis added).

Section 1491 makes clear that claims against *state governments* or *municipalities* are not within the jurisdiction of the Court of Federal Claims.  Therefore, to the extent that Defendants argued for application of the 6-year period of limitations set forth in 28 U.S.C. § 2501, that argument is wholly without merit.

[6]  *See* M.C.L. § 750.213.

17

3 (Mich. App. 2004).  There being no legally cognizable claim for extortion in Michigan,

Plaintiffs' claim for "extortion" will be dismissed.

D.   DEFENDANTS ARE IMMUNE FROM LIABILITY ON PLAINTIFFS'
      CLAIMS IN COUNT III FOR FRAUD AND DECEIT

    As indicated, in Count III, Plaintiffs also allege tort claims of "fraud and deceit"

against the Macomb County Board of Road Commissioners and three individual members

of the Board.  These claims are predicated upon the Road Commission's alleged taking,

damaging, trespassing and placing of encumbrances upon Plaintiffs' property in

connection with the improvements and paving of Garfield Road.  *See* Plaintiffs'

Complaint, ¶¶ 23-24; 34-35.

    However, M.C.L. § 691.1407 provides immunity from tort liability for

governmental agencies, governmental employees, and members of governmental boards

and commissions while engaged in the exercise of a governmental function.  With respect

to governmental agencies, M.C.L. § 691.1407(1) provides:

>    Except as otherwise provided in this act, a governmental agency is immune
>    from tort liability if the governmental agency is engaged in the exercise or
>    discharge of a governmental function. . . .

    "Governmental function" is defined as "any activity which is expressly or impliedly

mandated or authorized by constitution, statute or other law."  *Ross v. Consumer's Power*,

420 Mich. 567, 591 (1984); *see also Herman v. City of Detroit*, 261 Mich. App. 141, 680

N.W.2d 71 (2004), *app. denied*, 471 Mich. 906 (2004) (classifying an activity as

governmental, and thus immune from tort liability, only requires that there be some

18

constitutional, statutory or other legal basis for the activity in which the governmental agency was engaged).  The focus of the inquiry into whether an activity is a governmental function is the general activity and not the specific conduct.  *Ross, supra*, 420 Mich. at 621.  This focus is "broad and encompasses most of the activities undertaken by governmental agencies."  *Id.*

M.C.L. § 224.19(1) sets forth the authority given to the board of county road commissioners to maintain and construct roads:

> The board of county road commissioners may grade, drain, construct, gravel, shale, or macadamize a road under its control, make an improvement in the road, and may extend and enlarge an improvement.  The board may construct bridges and culverts on the line of roads, and repair and maintain roads, bridges and culverts.

M.C.L. § 223.19(3) further provides:

> . . .  The county road commissioners have all the authority with respect to the roads, bridges and culverts which is vested in highway officers in townships. . . .

M.C.L. § 224.19(2) further gives the board of county road commissioners broad authority to enter into financing arrangements to build roads with the county:

> . . .  The board of county road commissioners may borrow money, enter into contracts, and pledge tie credit of the county in the manner and within the limitations provided by law for this purpose.  For money borrowed, an obligation assumed, or a pledge of credit given, the bonds of the county may be issued and sold. . . .

Michigan courts have confirmed that designing, constructing and maintaining highways are governmental functions and that governmental agencies and officials acting in connection with such governmental functions are immune from tort liability arising

19

therefrom.  *See e.g., Potes v. Department of State Highways*, 128 Mich. App. 765, 341

N.W.2d 210 (1983); *Ovist v. Michigan Dep't of State Highways and Transp.*, 119 Mich.

App. 245, 326 N.W.2d 468 (1982).

As indicated, Plaintiffs claims of fraud and deceit arise out of the Board of Road

Commissioner's exercise of its statutory authority to build and maintain roads.  The

foregoing authorities establish that the Board is immune from liability on these claims

Section 691.1407(2) similarly provides the individual board member defendants

with immunity from tort liability:

> (2)  Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission or statutorily created task force of a governmental agency is immune from tort liability for injuries to a person or damage to property caused by the officer, employee, member, or volunteer while acting on behalf of a governmental agency if all of the following are met:

>> (a)  The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

>> (b) the governmental agency is engaged in the exercise or discharge of a governmental function.

>> (c)  The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.  As used in this subdivision, "gross negligence" means conduct so reckless to demonstrate a substantial lack of concern for whether an injury results.

M.C.L. § 691.1407(2).

In this case, there is nothing in the record to suggest that individual defendants were

acting outside of the scope of their authority as members of the Macomb County Board of Road Commissioners. Any decisions of the commissioners to lay-out and pave Garfield Road in 1995 was made by the commissioners in their capacity as members of the Board. It is the activity engaged in by the individual defendants at the time of the torts, <u>not</u> the allegedly tortious conduct that is determinative. *See Smith v. Department of Public Health*, 428 Mich. 540, 609, 410 N.W.2d 749, 779 (1987); *Smith v. Yono*, 613 F. Supp. 50, 53-54 (E.D. Mich. 1985). Furthermore, there is nothing from which "gross negligence", as defined within the statute, may be inferred so as to deny the individual defendants the protection of the Governmental Immunity Statute with respect to Plaintiffs' claims of fraud and deceit. The individual defendants, therefore, are immune from suit on Plaintiffs' claims of fraud and deceipt. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Count III of Plaintiffs' Complaint.[7]

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment are GRANTED.

---

[7] Furthermore, even in the absence of governmental immunity, Plaintiffs' claims of "fraud" and "deceit" against Defendants Gillette, Raymus and Sawicki, individually, fail. These three defendants were not even appointed as commissioners to the Road Commission at the time the alleged takings and trespasses occurred. *See* Affidavits of Fran Gillette, Thomas Raymus and Robert Sawicki, Defendants' Ex. B, C, and D. As a consequence, they cannot be held personally and individually liable for decisions made by their predecessor board members.

IT IS FURTHER ORDERED that Plaintiffs' Complaint be, and hereby is,

DISMISSED, in its entirety, with prejudice.[8]

Let JUDGMENT be entered accordingly.


s/Gerald E. Rosen

Gerald E. Rosen
United States District Judge

Dated:  November 8, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on November 8, 2005, by electronic and/or ordinary mail.


s/LaShawn R. Saulsberry

Case Manager

---

[8] Defendants' request for an award of sanctions is DENIED.